UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
BERNHARD CHRISTIAN HELGASON,        : 10 Civ. 5116 (PAC) (JCF)
                                    :
             Plaintiff,             :        REPORT AND
                                    :        RECOMMENDATION
     - against -                    :
                                    :
Certain STATE OF NEW YORK employees :
(unknown and known), and government :
notably agency DHCR Defendants,     :
                                    :
             Defendants.            :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:

     Bernhard Christian Helgason brings this action against the New
York State Division of Housing and Community Renewal ("DHCR"),
several of its employees, and the government of the State of New
York, including the Governor and the Court of Appeals.  He contends
that the defendants violated his constitutional rights to equal
protection, due process, and free speech by: (1) failing to honor
the full extent of his procedural right to object when the owner of
the building in which he lived (the "building owner") sought
permission to increase the building's rental rates; (2) applying an
improper standard in approving that increase; and (3) applying an
improper standard in judicial review of that approval.  The
defendants have moved to dismiss the action pursuant to Rule
12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,
arguing that this court lacks jurisdiction to determine the case,
that the defendants have full or qualified immunity, and that the
complaint fails to state a claim upon which relief can be granted.
For the reasons that follow, I recommend that the motion be
granted.

Background

In late 2006, the building owner submitted a request to DHCR pursuant to New York rent stabilization regulations, seeking permission to raise the rent at the building in which the plaintiff lives, 233 East 89th Street, because the building owner had made a "major capital improvement" ("MCI") to the building. (Complaint ("Compl.") at 14).  Shortly after the request was made, DHCR notified the plaintiff and other residents of the building that an MCI rent increase had been requested, and of the proper procedures for reviewing the MCI documentation and submitting any comments regarding the proposed increase to DHCR.  (Compl. at 14; Notice to Tenant of MCI Rent Increase Application ("MCI Notice"), attached as Exh. A to Plaintiff's Affidavit of Documentation Refuting and in Opposition to Defendant's Motion to Dismiss the Complaint dated March 25, 2011 ("Helgason Aff.")).  The plaintiff responded in a timely fashion to Lilia Albano, the Rent Administrator who had signed the MCI Notice, requesting that the records related to the MCI increase be made available to him at the Manhattan office of DHCR and that he be granted the extension of time for submitting his comments that the MCI Notice advised was available.  (Letter of Bernhard Christian Helgason dated Oct. 3, 2006, attached as Exh. C to Helgason Aff.; State Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("Def. Memo.") at 2).  Mr. Helgason submitted his response via certified mail and received a return receipt indicating that it had been accepted on behalf of DHCR by DHCR employee Sheila D. Clifton on October 5, 2006.

(Return Receipt dated Oct. 5, 2006, attached as Exh. D to Helgason Aff.).

In spite of Mr. Helgason's timely reply, DHCR issued an Order signed by Ms. Albano on October 16, 2006, granting the proposed rent increase and indicating, incorrectly, that "THERE WERE NO TENANT RESPONSES" to the notice of the increase application. (Order Granting MCI Rent Increase dated Oct. 16, 2006 ("MCI Order"), attached as Exh. E to Helgason Aff.). The Order included instructions for filing a Petition for Administrative Review ("PAR") of the Order, which the plaintiff immediately did. (MCI Order; Compl. at 14; Def. Memo. at 3; Letter of Bernhard Christian Helgason dated Oct. 30, 2006 and Petition for Administrative Review dated Oct. 30, 2006, attached as Exh. F to Helgason Aff.). The plaintiff received an automatic response from DHCR indicating that, pursuant to rent stabilization law, if he received no decision on the PAR within ninety days, he could elect to "consider the PAR 'denied' and . . . begin a court proceeding asking for judicial review under Article 78 of the civil practice laws and rules." (Petition for Administrative Review Docketing Acknowledgment Notice dated Nov. 20, 2006, attached as part of Exh. G to Helgason Aff.).

Accordingly, the plaintiff waited ninety days and shortly thereafter filed a motion to vacate the MCI Rent Increase Order pursuant to Article 78 in New York State Supreme Court. (Decision and Judgment dated July 6, 2007 ("Art. 78 Dec. I"), attached as Exh. C to Declaration of Susan Anspach dated Jan. 27, 2011 ("Anspach Decl."), at 1; Compl. at 14). Although she declined to

make a determination on the substance of the plaintiff's claims because there was no final administrative order and the claims were therefore premature, Justice Marcy L. Kahn directed that DHCR "render a final determination on petitioner's PAR within 60 days after service of a copy of this judgment." (Art. 78 Dec. I at 10-12, 14).

Pursuant to this order, DHCR mailed Mr. Helgason a copy of the file related to the building owner's MCI application and requested that he submit a response within twenty days. (Order and Opinion Denying Petition for Administrative Review dated Sept. 28, 2007 ("PAR Order"), attached as Exh. D to Anspach Decl., at 1). The plaintiff submitted a timely response (the "PAR response"), which DHCR then served on the building owner, who did not avail himself of the opportunity to reply. (PAR Order at 1). In the PAR response, Mr. Helgason complained that he had been afforded insufficient time and pointed out alleged inadequacies in the documentation of the MCI submitted by the building owner. (Decision and Order dated July 16, 2008 ("Art. 78 Dec. II"), attached as Exh. E to Anspach Decl., at 4). On September 28, 2007, Leslie Torres, Deputy Commissioner of DHCR, issued an Order denying the plaintiff's PAR. (PAR Order at 5). Ms. Torres' opinion acknowledged that the agency had "mishandled" the plaintiff's initial response to the notice that the building owner had requested an MCI rent increase and thereby "unintentionally" violated Mr. Helgason's procedural rights. (PAR Order at 2). However, based on review of the substantive comments in the PAR

4

response and the evidence supporting the MCI rent increase that the owner had originally submitted, Deputy Commissioner Torres affirmed the Rent Administrator's approval of the increase.  (PAR Order at 3-5).  She noted that the plaintiff had requested further time to review the relevant documents and consult experts before commenting in full but found that DHCR afforded him the maximum amount of time possible given the firm deadline that Justice Kahn had set.  (PAR Order at 2-3).

Meanwhile, having been informed by Justice Kahn's decision that any claims against the state for compensatory or punitive damages would have to be brought in the New York State Court of Claims, the plaintiff filed suit in that court.  (Art. 78 Dec. I at 14; Compl. at 15).  On November 30, 2007, Judge S. Michael Nadel of the Court of Claims reviewed the plaintiff's claims and found that "[t]hough portions of this claim seek money damages, the claimant is primarily seeking to annul and vacate DHCR's determination" and thus that any recovery by the plaintiff "must be made in the context of an article 78 proceeding."  (Decision and Order dated Nov. 30, 2007, attached as Exh. F to Anspach Decl., at 2).

Subsequently, the plaintiff sought relief from the now-final order denying his PAR through a second Article 78 proceeding in New York Supreme Court.  (Art. 78 Dec. II at 4-5; Compl. at 15).  In that court, Mr. Helgason sought an order

> 1) repealing the [DHCR] order granting a[n MCI] rent
> increase; 2) compensating him for the alleged violation
> of his due process, equal protection and free speech
> rights; 3) ordering DHCR to apologize to him; 4) ordering
> an internal review by DHCR and an external review of DHCR
> by both the Governor's and the Attorney General's

5

offices; 5) exempting him from future [PARs] and permitting him to approach the DHCR directly; 6) granting tenants a full 30 days to respond to DHCR orders, rather than 30 days from the mailing date of a notice; 7) ordering future fines imposed by DHCR to go directly to the injured party, not DHCR; 8) ordering DHCR to create a new, less deferential standard for evaluating MCI requests; and 9) granting costs and disbursements.

(Art. 78 Dec. II at 1). He argued that "because his due process rights were violated in the initial MCI rent increase, both that determination and the ensuing PAR are illegal," that "ignoring his request for the maximum extension [of time to respond] amounted to a violation of his due process, free speech and equal protection rights," and that "DHCR's standards are inherently unjust and too deferential to owners." (Art. 78 Dec. II at 5). Justice Shirley Werner Kornreich determined that there was a rational basis for DHCR's decision to approve the rent increase and that it was not arbitrary or capricious for DHCR to limit Mr. Helgason's time to respond after Justice Kahn's order and to make its determination based on the PAR response, which was primarily a demand for additional time to respond, since the plaintiff had been mailed a copy of the MCI rent increase application file and the PAR response included substantive comments based on that file. (Art. 78 Dec. II at 7-8). However, Justice Werner Kornreich also noted that, although it could not find DHCR's actions "arbitrary or irrational," they were "far from exemplary." (Art. 78 Dec. II at 8-9).

The plaintiff appealed this second Article 78 decision and the Court of Claims decision to the Appellate Division, which consolidated the two cases. (Compl. at 16). The Appellate

Division unanimously affirmed both decisions, finding Mr. Helgason's arguments "unavailing." <u>Helgason v. New York State Division of Housing and Community Renewal</u>, 66 A.D.3d 490, 490, 887 N.Y.S.2d 45, 45-46 (1st Dep't 2009) ("<u>Helgason I</u>"). The New York Court of Appeals denied further appeal, finding the case raised no "substantial constitutional question." <u>Helgason v. New York State Division of Housing and Community Renewal</u>, 14 N.Y.3d 764, 898 N.Y.S.2d 90 (2010) ("<u>Helgason II</u>").

On July 2, 2010, the plaintiff commenced the instant action. He argues that DHCR; its employees Lilia Albano, Sheila Clifton, and Leslie Torres; additional unknown DHCR employees; and the government of the State of New York have violated: (1) the Equal Protection Clause, by (a) selectively denying the plaintiff access to the file pertaining to the building owner's MCI rent increase application, which he was entitled to review and (b) not requiring more extensive, specific, verifiable documentation (in particular, the signature of a "natural person representative" of the contractor performing an MCI) from building owners in order to approve MCI increases, thereby placing a lighter burden on landlords than on tenants; (2) the Due Process Clause, by failing to abide by the appropriate administrative procedures for handling tenant responses; and (3) the First Amendment right to free speech, by representing in the MCI Order that "there were no tenant responses" when the plaintiff had in fact responded. (Compl. at 21-22). He additionally argues that the government of the State of New York, including the Court of Appeals as representative of all

the state courts, has violated his right to equal protection by unduly deferring to DHCR upon judicial review of its actions. (Compl. at 4, 21-22). As compensation, the plaintiff requests: (1) fifty million dollars in compensatory and punitive damages; (2) vacatur of the approval of the building owner's MCI rent increase and restoration of the plaintiff's rent to its previous level; (3) reimbursements by the building owner for any overpayment pursuant to the MCI rent increase; (4) application of a more stringent standard to MCI rent increase applications going forward; (5) admonishments by this Court regarding agency conformance with the Constitution; and (6) an order that the defendants "provide statement of capitulation to satisfaction of plaintiff." (Compl. at 22, 23, 25, 26, 27-39).

<u>Discussion</u>

    1.  <u>Motion to Dismiss</u>

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam); <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 110-11 (2d Cir. 2010). A complaint need not make "'detailed factual allegations,'" but it must contain more than mere "'labels and conclusions'" or "formulaic recitation[s] of the elements of a cause of action.'" <u>Ashcroft v. Iqbal</u>, __ U.S. __, __, 129 S. Ct. 1937, 1949-50 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Where the complaint's factual allegations

permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the minimum standard. Id. at __, 129 S. Ct. at 1950. In ruling on a motion to dismiss, the court's task "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)). The standards for considering a motion to dismiss under Rules 12(b)(1) and 12(b)(6) are "substantively identical." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003); accord Aiello v. Kellogg, Brown & Root Services, Inc., 751 F. Supp. 2d 698, 702 (S.D.N.Y. 2011).

Pro se complaints are held to less stringent standards than those drafted by lawyers. Erickson, 551 U.S. at 94; see also McKeown v. New York State Commission on Judicial Conduct, 377 Fed. Appx. 121, 122 (2d Cir. 2010). In fact, pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'" Kevilly v. New York, 410 Fed. Appx. 371, 374 (2d Cir. 2010) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)). Even after Iqbal, in which the Supreme Court imposed heightened pleading standards for all complaints, pro se complaints are to be liberally construed. See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum

pleading requirements.  See, e.g., Paul v. Bailey, No. 09 Civ. 5784, 2010 WL 3292673, at *4 (S.D.N.Y. July 21, 2010) (citing Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997)), report and recommendation adopted, 2010 WL 3292672 (S.D.N.Y. Aug. 18, 2010).

On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-55 (2d Cir. 2002).  However, the court may also consider documents "'integral to the complaint'" or those that were necessarily relied on by the plaintiff in drafting the complaint.  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis omitted) (quoting Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)).[1]  For 12(b)(1) motions, the

---

[1] The defendants have submitted materials in support of their motion to dismiss, and the plaintiff has been provided with the required Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings, advising him the motion might be converted to one for summary judgment.  (Order dated Jan. 31, 2011); S. & E.D.N.Y.R. 12.1.  Nevertheless, it is not necessary to treat this motion as one for summary judgment.  The additional materials submitted by the parties -- relevant administrative and court decisions, and the correspondence between Mr. Helgason and DHCR regarding the MCI rent increase application -- are all materials relied upon by the plaintiff in drafting his complaint or of which the court may take judicial notice.  See Piazza v. Florida Union Free School District, __ F. Supp. 2d __, __, No. 09 Civ. 7451, 2011 WL 1458100, at *6 (S.D.N.Y. April 7, 2011) (finding documents related to administrative proceedings "integral" to complaint and holding court may take judicial notice of administrative decisions); United States Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A.-Petrobras, No. 98 Civ. 3099, 2001 WL 300735, at *9 n.7 (S.D.N.Y. March 27, 2001) ("[T]he Court may take judicial notice of the relevant pleadings, motion papers, orders, and judgments in the State Court Action.").  Furthermore, I recommend that the defendants' motion to dismiss be granted in part under Rule 12(b)(1), for which evidence outside the pleadings may always be considered.  Therefore, I will continue to treat this motion as one for dismissal of the complaint pursuant to Rule 12(b)

court may always "'consider evidence outside the pleadings.'"
Aiello, 751 F. Supp. 2d at 702 (quoting Morrison v. National
Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008)).

 2. Rooker-Feldman Doctrine

 The defendants argue that this court lacks subject matter
jurisdiction over the plaintiff's claim under the Rooker-Feldman
doctrine, which bars lower federal courts from hearing "cases
brought by state-court losers complaining of injuries caused by
state-court judgments." (Def. Memo. at 8-10); Exxon Mobil Corp. v.
Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005).

 The Second Circuit has found, based on the United States
Supreme Court's decision in Exxon Mobil, that there are four
requirements for application of the Rooker-Feldman doctrine:

> First, the federal-court plaintiff must have lost in
> state court.  Second, the plaintiff must complain of
> injuries caused by a state-court judgment. Third, the
> plaintiff must invite district court review and rejection
> of that judgment.  Fourth, the state-court judgment must
> have been rendered before the district court proceedings
> commenced.

Hoblock v. Albany County Board of Elections, 422 F.3d 77, 85 (2d
Cir. 2005) (internal quotation marks and alterations  omitted).
The first and fourth requirements are essentially procedural, while
the second and third requirements are substantive.  Id.  A claim
brought in federal court is "'inextricably intertwined'" with a
state court judgment, and therefore barred by Rooker-Feldman, if it
meets these requirements, even if the state court did not rule on
the claim.  Id. at 86 (quoting District of Columbia Court of

of the Federal Rules of Civil Procedure.

Appeals v. Feldman, 460 U.S. 462, 483-84 n.16 (1983)).

The plaintiff plainly meets the procedural requirements for application of Rooker-Feldman. He has lost several times in state court and exhausted his options for appeal before commencing this action. See Helgason II. However, only one of the plaintiff's claims satisfies the substantive requirements of the doctrine. An injury is "caused" by a state court judgment "when that judgment constitutes the 'source of the injury,' as opposed to being merely a court adjudication expressly affirming or otherwise leaving undisturbed a determination made by a third party that embodies the wrongful conduct the plaintiff asserts brought about the claimed harm in the first instance." Sindone v. Kelly, 439 F. Supp. 2d 268, 272 (S.D.N.Y. 2006), aff'd, 254 Fed. Appx. 58 (2d Cir. 2007). Here, the decisions by the state courts are merely that -- adjudications that leave undisturbed most of the underlying wrongs that Mr. Helgason alleges, which stem from the actions of DHCR. See, e.g., O'Connor v. New York City Housing Authority, No. 08 CV 3623, 2010 WL 1741369, at *4-6 (E.D.N.Y. March 24, 2010) ("[T]he true 'source of the injury,' is not the Article 78 proceedings at all, but rather the [] administrative hearing from which they arose." (internal citation omitted) (quoting Hoblock, 422 F.3d at 87)), report and recommendation adopted, 2010 WL 1741368 (E.D.N.Y. April 28, 2010); Sindone, 439 F. Supp. 2d at 274 ("[T]he Appellate Division decision did not 'cause' or 'produce' the injury for which [the plaintiff] seeks relief -- his allegedly wrongful dismissal . . . -- because the state court itself did not take the initial

12

action to terminate [the plaintiff]'s employment, nor did the [employer] act under compulsion of a state court . . . ."); see also Hoblock, 422 F.3d at 88 ("The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by Rooker-Feldman, of the state-court judgment.").

This is so even though the plaintiff's claims regarding DHCR's actions would require the federal court to "'den[y] a legal conclusion' reached by a state court." Hoblock, 422 F.3d at 87 (alteration in original) (quoting Exxon Mobil Corp., 544 U.S. at 293). Although, as the defendants contend, determining the plaintiff's current claims "would require the district court to decide questions that were already decided by the state court" (Def. Memo. at 8), because the plaintiff "argued the same causes of action as are set forth herein" (Def. Memo. at 9), this is no longer enough to bar federal review of such claims. See McKithen v. Brown, 481 F.3d 89, 97-98 (2d Cir. 2007) ("[T]he applicability of the Rooker-Feldman doctrine turns not on the similarity between a party's state-court and federal-court claims . . . , but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court."); Hoblock, 422 F.3d at 87 (noting that Supreme Court in Exxon Mobil limited Rooker-Feldman by establishing that "a plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of Rooker-Feldman"); see also Skinner v. Switzer, __ U.S. __, __, 131

13

S. Ct. 1289, 1297 (2011) ("If a federal plaintiff present[s][an] independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." (alteration in original) (internal quotation marks omitted) (citing Exxon Mobil Corp., 544 U.S. at 292-93)); McKithen, 481 F.3d at 97 n.7 (explaining that "independent claim" requirement has no substantive content but is merely descriptive such that "if [] the Exxon Mobil requirements are not met, the plaintiff must be said to have raised an 'independent claim' in federal court").[2]

_____

[2] Although the Rooker-Feldman doctrine may not divest a federal court of jurisdiction in a particular case, "[t]he Full Faith and Credit Act, 28 U.S.C. § 1738, originally enacted in 1790, . . . requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" Exxon Mobil Corp., 544 U.S. at 293 (quoting Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523 (1986)). And, although preclusion is an affirmative defense -- which typically means that a party waives the defense by failing to raise it -- courts may "act sua sponte and interpose the defense if it has not been raised." Scherer v. Equitable Life Assurance Society of the United States, 347 F.3d 394, 398 & n.4 (2d Cir. 2003); Bey v. City of New York, Nos. 99 Civ. 3873, 01 Civ. 8906, 01 Civ. 9406, 2010 WL 3910231, at *6 (S.D.N.Y. Sept. 21, 2010) ("[I]t is well settled in this Circuit that a court is free to raise the defense of res judicata sua sponte."). However, the purpose of requiring a party to plead collateral estoppel as an affirmative defense is to give the opposing party notice and an opportunity to respond. See Curry v. City of Syracuse, 316 F.3d 324, 331 (2d Cir. 2003). Thus, it may not be appropriate for a court to invoke the doctrine sua sponte where doing so may prejudice one party or make it difficult for a court to navigate the issue without the assistance of briefs. See McKithen, 481 F.3d at 104; Scherer, 347 F.3d at 398 n.4 ("[T]he sua sponte application of res judicata is not always desirable, given the variety of legal and equitable considerations involved and the difficulties that may be associated with determining its applicability when the parties have not briefed the issue."); Bey, 2010 WL 3910231, at *6. Although it seems likely that collateral estoppel should bar the plaintiff's claims in this case, the parties have not had an opportunity to brief this specific issue, and, as will be discussed below, there are other grounds on which

Nonetheless, one of the plaintiff's claims -- that his right to equal protection was violated when the New York courts considering his claims applied a standard deferring to agency determinations to such a degree that it would "potentially/actually taint or otherwise not allow, fully or in part, for agency adversary to have proper trial" (Compl. at 21) -- alleges an injury "caused" by a state court judgment of which he seeks reversal here. See Hoblock, 422 F.3d at 85. This claim is therefore barred by the Rooker-Feldman doctrine, and I recommend that it be dismissed.

3.  Eleventh Amendment Immunity

The defendants have also moved to dismiss this case pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the plaintiff is prohibited by the Eleventh Amendment to the U.S. Constitution from bringing suit against the government of the State of New York, including the Governor, the Court of Appeals, and DHCR and its employees, to the extent they are sued in their official capacity. (Def. Memo. at 6-8). The Eleventh Amendment prohibits jurisdiction in the federal courts over "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been

---

to dismiss the case.  Therefore, I need not determine whether the plaintiff's claims are precluded.

15

interpreted also to bar federal suits against state governments by a state's own citizens." Woods v. Rondout Valley Central School District Board of Education, 466 F.3d 232, 236 (2d Cir. 2006).

> Stated as simply as possible, the Eleventh Amendment means that, "as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity," or unless Congress has "abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment."

Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original) (quoting Woods, 466 F.3d at 236). The Eleventh Amendment's bar extends to suits against state agencies, such as DHCR, against officials of that agency sued in their official capacities, and against branches of state government such as the Court of Appeals and the governor. See Gollomp, 568 F.3d at 366-67 (extending Eleventh Amendment immunity to New York State Unified Court System); Gray v. Internal Affairs Bureau, 292 F. Supp. 2d 475, 476 (S.D.N.Y. 2003) (extending Eleventh Amendment immunity to DHCR); Crockett v. Pataki, No. 97 Civ. 3539, 1998 WL 614134, at *4-5 (S.D.N.Y. Sept. 14, 1998) (extending Eleventh Amendment immunity to DHCR, and to DHCR official and governor, sued in their official capacities).

"[A] state will not be deemed to have waived its sovereign immunity unless the waiver is 'express' and 'unequivocal.'" Doe v. Pataki, 481 F.3d 69, 78 (2d Cir. 2007) (quoting College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 680 (1999)). The plaintiff has offered no evidence that the State has consented to be subject to this suit; indeed, the

16

defendants have invoked their Eleventh Amendment immunity.   (Def. Memo. at 6-8); McKeown, 377 Fed. Appx. at 122-23.   Furthermore, 42 U.S.C. § 1983, the statute that creates a cause of action for violations of the U.S. Constitution, does not abrogate sovereign immunity.[3]   See Quern v. Jordan, 440 U.S. 332, 340-41 (1979); accord Herschman v. City University of New York, No. 08 Civ. 11126, 2011 WL 1210200, at *9 (S.D.N.Y. Feb. 28, 2011), report and recommendation adopted, 2011 WL 1210209 (S.D.N.Y. March 29, 2011); Andino v. Fischer, 698 F. Supp. 2d 362, 381 (S.D.N.Y. 2010). Therefore, Eleventh Amendment immunity applies in this case.

However, "the Eleventh Amendment immunizes states only from retroactive claims for money damages." Brooklyn School for Special Children v. Crew, No. 96 Civ. 5014, 1997 WL 539775, at *13 (S.D.N.Y. Aug. 28, 1997). "[A] state official acting in his or her

---

[3] Although he does not cite to this statute in his complaint, all of the plaintiff's claims allege constitutional violations against state actors and do not implicate any statutory violations. (Compl. at 21-24).   Therefore, I will construe his complaint as asserting a claim under 42 U.S.C. § 1983.   See City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 724 (1999) (Scalia, J., concurring) ("[F]or almost all § 1983 claims arising out of constitutional violations, no alternative private cause of action does exist."); McLawrence v. Department of Corrections, No. 08 Civ. 11095, 2010 WL 2710640, at *3 (S.D.N.Y. July 8, 2010) ("Section 1983 does not grant any substantive rights but rather provides a procedure for redress for the deprivation of rights established elsewhere, such as in the Constitution or federal statutes." (internal quotations omitted)), report and recommendation adopted 2010 WL 3155048 (S.D.N.Y. Aug. 9, 2010). The plaintiff does attempt to establish a broader right to relief by citing to 18 U.S.C. §§ 241 and 242; however, these are criminal statutes and do not provide individuals with a cause of action to assert claims against the government.   (Plaintiff's Memorandum of Law in Support of Cross Motion for Jury Trial and Related Relief and in Opposition to Defendant's Motion to Dismiss the Complaint ("Pl. Memo.") at 58-59); see Piorkowski v. Parziale, No. 02 CV 963, 2003 WL 21037353, at *8 (D. Conn. May 7, 2003).

official capacity may be sued [] for prospective injunctive relief from ongoing violations of federal law." McKeown, 377 Fed. Appx. at 123. But, "a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly, even though in reality the suit is against the state and any funds required to be expended by an award of prospective relief will come from the state's treasury." Santiago v. New York State Department of Correctional Services, 945 F.2d 25, 32 (2d Cir. 1991); accord Wang v. Office of Professional Medical Conduct, New York, 354 Fed. Appx. 459, 461 (2d Cir. 2009). Additionally, the Eleventh Amendment does not bar recovery against state officials sued in their personal capacities. Hafer v. Melo, 502 U.S. 21, 27-31 (1991); accord Davis v. New York, 316 F.3d 93, 102 (2d Cir. 2002).

Here, the plaintiff seeks both monetary damages and prospective injunctive relief in the form of a series of declaratory and injunctive orders affecting the functioning of DHCR and New York State courts, vacatur of the agency's determination regarding the MCI rent increase application, and an apology from the defendants. (Compl. at 20, 22-23, 25-40). He sues the individual defendants "individually and in their capacities as employees" or "individually and as ranking managing employer of all executive branch employees." (Compl. at 1). Construing this pro se complaint liberally, Erickson, 551 U.S. at 94, I assume he intends to sue these officials in their personal capacities. Thus, I recommend that all of the plaintiff's claims with respect to DHCR

and the government of the state of New York, including the Court of
Appeals, be dismissed for lack of subject matter jurisdiction.[4]  I
also recommend that his claims for monetary damages with respect to
DHCR officials sued in their official capacities be dismissed on
the same basis.  However, the Eleventh Amendment does not bar his
claims for declaratory and injunctive relief against these
officials in their personal and official capacities, nor his
damages claims against these defendants in their personal
capacities.[5]

    4.  <u>Failure to State a Claim</u>

    Nonetheless, I recommend that the plaintiff's remaining claims
with respect to these defendants be dismissed pursuant to Rule
12(b)(6) for failure to state a claim upon which relief can be
granted.  The plaintiff alleges three types of constitutional
violations: violation of his right to due process pursuant to the
Fourteenth Amendment; violation of his right to equal protection
pursuant to the Fourteenth Amendment; and violation of his right of

---

    [4] The plaintiff argues that these defendants should be held
responsible in spite of their Eleventh Amendment immunity pursuant
to the doctrine of respondeat superior.  (<u>E.g.,</u> Pl. Memo. at 31,
67).  However, this argument is unavailing.  That doctrine is
insufficient to overcome the jurisdictional bar of Eleventh
Amendment immunity.

    [5] Although the plaintiff's complaint names as defendants
several employees of DHCR who have not yet been identified, his
allegations establish that these employees were involved in the
same administrative determinations that form the basis of his
claims against the named defendants.  (Pl. Memo. at 9, 35, 60).  As
such, this analysis, as well as the analyses that follow, apply to
these officials to the same extent that they apply to the named
defendants.

free speech pursuant to the First Amendment.[6]  Because "Section
1983 does not grant any substantive rights but rather provides a
procedure for redress for the deprivation of rights established
elsewhere, such as in the Constitution or federal statutes,"
McLawrence, 2010 WL 2710640, at *3 (internal quotations omitted),
I will review whether the plaintiff has established constitutional
violations sufficient to state a claim under § 1983.  Because I
find that he has not, I need not reach the question of whether he
has established other requisite elements of a § 1983 claim against
these defendants.  See Wallace v. Suffolk County Correctional
Facility, No. 09 CV 3685, 2010 WL 2710629, at *2 (E.D.N.Y. July 2,
2010); Simpson v. Enlarged City School District of Newburgh, No. 05
Civ. 5144, 2005 WL 2647947, at *3 (S.D.N.Y. Sept. 30, 2005).

    1.   Due Process

The plaintiff alleges that his due process rights were
violated when DHCR did not properly process the MCI rent increase
application by failing to grant him an extension of time in which
to investigate and comment upon the application, failing to give
him an opportunity to access the application file in the Manhattan
office of DHCR, and failing to acknowledge or consider his comments
in approving the application.  (Compl. at 14, 17, 21; Pl. Memo. at

---

[6]  It appears that the plaintiff is also alleging a
simultaneous violation of these rights as provided by the New York
State Constitution.  (E.g., Compl. at 5, 23).  However, "'no
private right of action exists for violations of the New York State
Constitution where a Plaintiff has alternative damage remedies
available' under § 1983." Mangano v. Cambariere, No. 04 Civ. 4980,
2007 WL 2846418, at *1 (S.D.N.Y. Sept. 27, 2007) (quoting Flores v.
City of Mount Vernon, 41 F. Supp. 2d 439, 447 (S.D.N.Y. 1999)).
Therefore, I recommend that any such claims be dismissed.

19).  "'[I]n considering whether defendants have failed to afford plaintiffs due process . . . the Court evaluates the entire procedure, including the adequacy and availability of remedies under state law.'"  Dibbs v. Roldan, 356 F. Supp. 2d 340, 353 (S.D.N.Y. 2005) (alteration in original) (quoting Liotta v. Rent Guidelines Board for the City of New York, 547 F. Supp. 800, 802 (S.D.N.Y. 1982)).  "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'"  Spinelli v. City of New York, 579 F.3d 160, 170 (2d Cir. 2009) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  "In determining how much process is due, a court must weigh (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards, and (3) the government's interest."  Id. (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

I will assume for the sake of this analysis that the plaintiff had a property interest in the outcome of the MCI rent increase application because it affected the amount of his rent.  (MCI Order); see Srubar v. Rudd, Rosenberg, Mitofsky & Hollender, 875 F. Supp. 155, 164 (S.D.N.Y. 1994) (assuming arguendo "that a tenancy in a rent-controlled apartment is a 'property interest'" for due process purposes), aff'd, 71 F.3d 406 (2d Cir. 1995); Woodner v. Eimicke, No. 87 Civ. 8872, 1990 WL 100909, at *4-6 (S.D.N.Y. July 13, 1990) (assuming arguendo that landlord has property interest in the right to charge the maximum rent legally permitted under rent stabilization laws); Sidberry v. Koch, 539 F. Supp. 413, 418-19

(S.D.N.Y. 1982) (assuming arguendo that tenants have protectable interest in stable rents in city-owned buildings); see also Allerton Coops Tenants Association v. Biderman, 189 A.D.2d 249, 253, 596 N.Y.S.2d 10, 13 (1st Dep't 1993) (finding that "due process rights are conferred whenever a mandatory regulatory scheme consisting of specified and particularized criteria has been adopted" but noting that "while the recent trend has been for courts to find that there is a constitutionally protected property interest in legislation such as that establishing rent control or stabilization, the legal authority relating to this issue is not entirely clear").  However, notwithstanding that an approved increase to the rent owed on a rent-controlled apartment has "ongoing increases built ad infinitum in to every successive rent," this property interest, which amounts to $8.64 per month, plus resulting incremental increases in subsequent rent adjustments, is minimal.  (Pl. Memo. at 21; MCI Notice).

Furthermore, the Second Circuit has "held that an Article 78 proceeding . . . provides a meaningful remedy where violations of due process by a local governmental entity are alleged." Vargas v. City of New York, 377 F.3d 200, 208 (2d Cir. 2004).  Even where a person is improperly deprived of their property, an adequate post-deprivation remedy can cure this harm; an Article 78 proceeding is an adequate post-deprivation remedy.  Id.; see also Stevens v. New York, 691 F. Supp. 2d 392, 397 (S.D.N.Y. 2009); Henderson v. New York, 423 F. Supp. 2d 129, 145 (S.D.N.Y. 2006).  This is particularly so here because the violation of the plaintiff's

rights to access the file and comment upon the application was "random and unauthorized," rather than the result of a policy. See Albright v. Oliver, 510 U.S. 266, 284 (1994) ("[A] state actor's random and unauthorized deprivation of [an] interest cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate postdeprivation remedy."); accord New York State National Organization for Women v. Pataki, 261 F.3d 156, 169 n.3 (2d Cir. 2001) ("NOW"); Smart v. City of New York, No. 08 Civ. 2203, 2009 WL 862281, at *12 n.10 (S.D.N.Y. April 1, 2009).  In this case, although DHCR initially did not follow its procedure with respect to the plaintiff, he sought access to a post-deprivation remedy and was provided with full process by DHCR as a result.  (Art. 78 Dec. I at 14; PAR Order).  That process was again reviewed by the state courts, which found that it met appropriate standards.  (Art. 78 Dec. II) ; Helgason II, 14 N.Y.3d 764, 898 N.Y.S.2d 90; Helgason I, 66 A.D.3d 490, 887 N.Y.S.2d 45.  Thus, given that the property interest at issue is minimal and the plaintiff has repeatedly accessed the state courts in order to obtain the post-deprivation remedy of Article 78 review -- and subsequent appeal -- he has failed to state a claim for violation of the Due Process Clause of the Fourteenth Amendment.

     2.   Free Speech

The plaintiff alleges that his freedom of speech was violated by DHCR's "deliberate and willful representation to all tenants that there were no tenant responses" when the plaintiff had, in fact, responded to the building owner's MCI rent increase

application, and by the failure to subsequently make a public statement correcting this representation.  (Compl. at 21).  The plaintiff contends that "[f]reedom of speech . . . includes right not to have your actual speech misrepresented and/or falsified." (Compl. at 21).  This is incorrect.  Although the First Amendment protects the "rights to complain to public officials and to seek administrative and judicial relief," Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994); accord Hampton Bays Connections, Inc. v. Duffy, 127 F. Supp. 2d 364, 372 (E.D.N.Y. 2001), it "'provides no guarantee that a speech will persuade or that advocacy will be effective' . . . [and] does not impose any affirmative obligation on the government to listen [or] to respond."  Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463, 465 (1979) (quoting Hanover Township Federation of Teachers Local 1954 (AFL-CIO) v. Hanover Community School Corp., 457 F.2d 456, 461 (7th Cir. 1972)).

In order to show that his freedom of speech was violated, the plaintiff "must come forward with evidence showing either that (1) defendants silenced him or (2) defendants' actions had some actual, non-speculative chilling effect on his speech."  Williams v. Town of Greenburgh, 535 F.3d 71, 78 (2d Cir. 2008) (internal quotation marks and alteration omitted).  The facts that the plaintiff has alleged establish instead that the plaintiff was afforded with notice and an explicit opportunity to comment.  (MCI Notice).  And although his response was inadvertently not considered or referenced when the MCI rent increase application was granted (PAR

Order at 2), this failure is, if anything, a violation of the plaintiff's procedural due process right to have adjudicative facts considered before the government infringes on his property rights and not of his right to free speech, which he had already exercised and continues to vigorously exercise. See Langevin v. Chenango Court, Inc., 447 F.2d 296, 300 (2d Cir. 1971) ("Normally, when . . . [an] administrative agency is about to take action adverse to a citizen, on the basis of 'adjudicative facts,' due process entitles the citizen at some stage to have notice, to be informed of the facts on which the agency relies, and to have an opportunity to rebut them."); accord Thomas v. City of New York, 143 F.3d 31, 36 n.7 (2d Cir. 1998); see also NOW, 261 F.3d at 169-70 ("When a government agency terminates or impairs an individual's constitutionally cognizable property interest through adjudicative proceedings, due process requires that the individual be given adequate notice for the proceedings to be 'accorded finality.'" (quoting Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 13 (1978)). This due process violation was, as discussed above, cured by subsequent post-deprivation process, which provided the plaintiff with an adequate opportunity to express his views and gave those views due consideration before making a determination on the building owner's MCI rent increase application. (PAR Order at 2-5). Accordingly, the plaintiff has not stated a claim for violation of his First Amendment rights.

    3.   Equal Protection

    The plaintiff alleges that the defendants violated his right

to equal protection in three respects: (1) by discriminating against tenants by not requiring sufficient supporting documentation for MCI rent increase applications (Compl. at 12, 22); (2) by arbitrarily refusing to allow him access to the application file although tenants are typically provided such access (Compl. at 21); and (3) by discriminating against plaintiffs by excessive deference to agencies in judicial proceedings (Compl. at 21-22).   As discussed above, I recommend that the third allegation be dismissed pursuant to the Rooker-Feldman doctrine. I will therefore analyze only the first two claims.

"The Equal Protection Clause of the Fourteenth Amendment guarantees 'a right to be free from invidious discrimination in statutory classifications and other government activity.'" Laupot v. City of New York, No. 01 Civ. 3294, 2002 WL 83673, at *2 (S.D.N.Y. Jan. 18, 2002) (quoting Harris v. McRae, 488 U.S. 297, 322 (1980)).  "The Clause is 'essentially a direction that all persons similarly situated should be treated alike.'" Id. (quoting City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985)).

In most cases, in order to state a claim for violation of the Equal Protection Clause, the plaintiff must establish that he is a member of a class that receives special protection under the Constitution, such as persons of a particular race or gender.  Id. Tenants -- even tenants of rent-controlled or rent-stabilized buildings -- are not a protected class.  Id.  If a plaintiff alleges differential treatment according to a policy or statute but

26

cannot establish membership in a protected class, the court need only find a rational basis for that policy in order to deem it constitutional. Gunter v. Long Island Power Authority/Keyspan, No. 08 CV 498, 2011 WL 1225791, at *9 (E.D.N.Y. Feb. 15, 2011), report and recommendation adopted, 2011 WL 1154382 (E.D.N.Y. March 29, 2011); accord Fedor v. Kudrak, 421 F. Supp. 2d 473, 479 (D.Conn. 2006). "Under this test, '[t]here need only be a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" Gunter, 2011 WL 1225791, at *9 (alteration in original) (internal quotation marks omitted) (quoting Lewis v. Thomson, 252 F.3d 567, 582 (2d Cir. 2001)). The policy determination by DHCR officials that individual signatures of "natural person" contractors are unnecessary to support a building owner's MCI rent increase application is rationally related to the state's interest in minimizing the burden of investigating and verifying these applications. (Compl. at 12-13, 22; PAR Order at 3-4; Art. 78 Dec. II at 7). Therefore, the plaintiff's argument pertaining to tenant discrimination fails to state a claim of violation for the Equal Protection Clause.

For a plaintiff who cannot claim membership in a protected class to establish a "class of one" selective treatment claim under the Equal Protection Clause, that person must allege "that the defendants intentionally treated him differently from others similarly situated without any rational basis." Price v. City of New York, 264 Fed. Appx. 66, 68 (2d Cir. 2008) (emphasis in original); accord Analytical Diagnostic Labs, Inc. v. Kusel, 626

F.3d 135, 143 (2d Cir. 2010), cert. denied, __ St. Ct. __, No. 10-1232, 2011 WL 1374072, at *1 (June 6. 2011).  Here, the plaintiff cannot establish that his differential treatment was intentional. The failure of DHCR officials to provide the plaintiff with access to the relevant MCI rent increase application files was inadvertent (PAR Order at 2), and that error was corrected before the agency reconsidered the plaintiff's objections to that application (PAR Order at 1).  As such, the plaintiff's argument pertaining to individual discrimination also fails to state a claim of violation of the Equal Protection Clause.

Conclusion

For the reasons set forth above, I recommend that the defendants' motion to dismiss be granted.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, Room 735, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

28

Dated:     New York, New York
           June 24, 2011


Copies mailed this date to:

Bernhard Christian Helgason
233 East 89th Street, Apt. D3
New York, New York 10128

Susan Anspach, Esq.
Assistant Attorney General
120 Broadway
New York, New York  10271